IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **JAPHETH L. MCALISTER**, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )     CASE No. 3:12-cv-0556 |
| | )     SENIOR JUDGE NIXON |
| **MICHAEL ASTRUE,** | )     MAGISTRATE JUDGE BROWN |
| **COMMISSIONER OF** | ) |
| **SOCIAL SECURITY** | ) |
| | |
|     **Defendant.** | |

**To: The Honorable John T. Nixon, Senior United States District Judge**

### Report and Recommendation

This action was brought under 42 U.S.C. §§ 405(g), 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("SSA") upon an unfavorable decision, by the SSA Commissioner ("the Commissioner"), regarding plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Title XVI of the Supplemental Social Income Act ("SSI"). 42 U.S.C. §§ 416(i), 423(d), 1382(c). For the reasons explained below, the undersigned **RECOMMENDS** that the plaintiff's motion for judgment on the administrative record be **GRANTED IN PART**, the Defendant's motion be **DENIED**, and the case be **REMANDED** to the Commissioner for rehearing.

## I.     PROCEDURAL HISTORY

Japheth L. McAlister ("Plaintiff") filed for DIB under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416 and 1382, on February 18, 2009. (Administrative Record ("AR.") pp. 117-127) Plaintiff's claims were founded upon diagnosis of bipolar disorder and obsessive-compulsive disorder. (AR. p. 12) Plaintiff's request was denied on November 17, 2009 and his request for reconsideration was denied on March 17, 2010. (AR. pp. 55-9, 67-70)

Subsequent to Plaintiff's request, a hearing was conducted before an Administrative Law Judge ("ALJ"), Donald E. Garrison, on July 28, 2011. (AR. p. 10) Present for the hearing were Plaintiff, his attorney Brenda G. Benson, and vocational expert Kenneth N. Anchor, Ph.D. ("VE"). (AR. p. 12)

The ALJ denied Plaintiff's application for DIB on August 24, 2011 and Plaintiff requested review of the ALJ's determination on February 11, 2012. (AR. pp. 7-8, 10-22) The SSI Appeals Council denied review of the ALJ determination on April 19, 2012. (AR. pp. 1-3) Thus, the ALJ's determination constituted the Commissioner's final determination at that time.

The plaintiff brought this action in district court on June 12, 2012 seeking judicial review of the Commissioner's decision. (Docket Entry ("DE") 1) The defendant filed an answer and a copy of the administrative record on August 21, 2012. (DE 9, 10) Thereafter, the plaintiff moved for judgment on the administrative record on October 12, 2012 (DE 12), to which the defendant filed a response on January 22, 2013, also moving for judgment on the administrative record (DE 19). Plaintiff filed a reply on May 17, 2013. (DE 24)

This matter is properly before the court.

## II. THE RECORD BELOW

**A. Medical Evidence**

The record indicates a diagnosis of Obsessive-Compulsive disorder and major depressive disorder on November 19, 2005. (AR. p. 324) Plaintiff was hospitalized at Middle Tennessee Mental Health in January of 2006 after an apparent overdose. (AR. pp. 198- 219) At discharge, the medical assessment was that Plaintiff suffered from bipolar disorder, most recent episode mixed, with obsessive compulsive traits. (AR. p. 205). From 2006 through August of 2012, Plaintiff underwent treatment at Volunteer Behavioral Health Care ("VBHC") (AR. pp. 318-354,

2

365-472), also referred to as The Community Group, and Mental Health Cooperative ("MHC") (AR. pp. 357-64). Plaintiff worked consistently until 2005 earning on average $20,000.00 per year. (AR. p. 129)

In July of 2010, Plaintiff experienced an increase in symptoms. (AR. p. 357-64) On July 29, 2010, Plaintiff complained to MHC's staff that he had a "recurrent fantasy of putting a hair dryer in the bathtub with himself." (AR. p. 357) Plaintiff reported prior plans to hang himself with a belt and purchase a gun to have "a homeless person shoot him." (AR. p. 471, 582) Between July of 2010 and July of 2011, Plaintiff isolated at home, had little interaction with others, became obsessed with his medications, and stopped working all together. (AR. pp. 129, 357-87, 425-30) On May 11, 2011, Plaintiff was again admitted to VBHC's crisis care unit after reportedly planning to jump off of a bridge. (AR. p. 467) At that time, Plaintiff was diagnosed with bipolar disorder, type I, most recent episode depressed, severe with psychotic features. (AR. p. 471) VBHC also assessed Plaintiff's global assessment of functioning ("GAF") at 35 on a scale of 100. (AR. p. 471)

**B. DDS Expert Opinions**

Plaintiff was examined by Ms. Janice Barkley, SSA's consulting psychologist, who reported that:

> Mr. McAlister's ability to understand and remember does not appear to be impaired in anyway. He appears to be functioning probably in the average range of intellectual functioning. His concentration and persistence are good during the interview and exam.
>
> He indicates that he has not had a lot of difficulty getting along with people except when he was having some episodes where he was confrontational with people when he was not on his medicine. He said he has not had that problem since then. Mr. McAlister indicates he has had problems with managing money and probably would need someone to assist him in that realm. He reports he has been bipolar for a number of years and says his depression from that has caused him to sleep excessively and at times not be motivated and miss a lot of work. He does appear qualified for bipolar disorder. He has had some depression in the past

3

and suicidal thought but does not appear to be significantly depressed at this point or suicidal. It appears as though his adaptation to work would be significantly limited and is limited somewhat by his bipolar issues of excessive sleep. It might be important to rule out the possibility of a personality disorder with dependent features. Even Mr. McAlister says he has become extremely dependent on the woman with whom he lives. He said of course she is dependent on him too because she is afraid to live alone.

(AR. p. 253)

Plaintiff was examined by Dr. Robert de la Torre, Psy. D., SSA's consultative psychiatrist, on November 11, 2009. (AR. pp. 291-317) Dr. de la Torre concluded that Plaintiff experienced slight to moderate impairments in all GAF categories. (AR. pp. 301, 314-17) Dr. de la Torre's professional observation was that:

> ADLS – Occasionally neglects hygiene. Prepares simple meals. Can do basic HH chores, but has difficulty keeping his room clean. Can drive and travel independently. Goes shopping for groceries 4x/month, Occasionally goes to dance club or movie. Ability to get along with others better with meds. Usually interacts appropriately with authority figures, but was once fired d/t argument with new supervisor. Ability to sustain attention and maintain attention varies. Occasionally needs instructions repeated. Does not handle changes in routine well.
>
> The claimant's allegations are credible, as the dxs of bipolar do, r/o personality do could reasonably produce the stated symptoms and functional limitations. The severity alleged is consistent with the objective findings. In addition, the functional limitations described by the claimant demonstrate consistency throughout the case record.
>
> Totality of evidence indicates mild to moderate overall limitations. The claimant's sxs and impairments would not singly or in combination prevent the claimant from completing work-like activities; however, concentration, persistence and pace and social ability are somewhat impacted by the diagnoses and therefore would cause moderate limitations in basic work-like duties.

**C. Testimonial Evidence**

    1. *Plaintiff's Testimony*

Plaintiff testified that he "always took the medicine" that his doctors prescribed, but over the last year his symptoms had worsened. (AR. p. 36, 41) He reported increased self-isolation, claiming to have ventured out very little over the preceding seven months. (AR. pp. 39) He was

only able to get out through medication and by forcing himself when his medications did not work. (AR. p. 39) He was very suicidal and spent most of the prior seven months lying in the floor of the living room of his house. (AR. p. 41, 44) He reported that he had spent little time with his sixteen year old son over the previous year, and had to force himself to clean his room or to attend appointments at VBHC. (AR. p. 40, 42-3) Plaintiff also reported that telemarketing was the only type of work that he could perform. (AR. p. 44) Being around other individuals distracted him, his inability to concentrate caused his work product to suffer, and his illness caused him to miss too many work days. (AR. p. 44)

2. *Vocational Expert's Testimony*

The VE assessed Plaintiff's ability to work under the diagnoses of Ms. Barkley and Dr. de la Torre. (AR. p. 46) According to the VE, if Plaintiff's symptoms were "being managed such that he could perform on a regular work schedule day in and day out, [work as a kitchen helper or packager] could be performed." (AR. p. 46) The ALJ also testified that if the recent increase in symptoms reported by Plaintiff were to persist, then "work on a sustained basis in a conventional job setting would present [Plaintiff] with difficulties." (AR. p. 47)

### III. ANALYSIS

**A. Standard of Review**

The District Court's review of the Commissioner's denial of DIB is limited to a determination of whether those findings are supported by substantial evidence and whether correct legal standards were applied. 42 U.S.C. § 405(g); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). A finding of substantial evidence does not require that all of the evidence in the record preponderate in favor of the ALJ's determination, but does require more than a mere

5

scintilla of support for a denial of DIB. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

The ALJ's determination is entitled to deference where "a reasonable mind might accept [the evidence in the record] as adequate to support" the ALJ's determination even though it could also support a different conclusion. *Rogers*, 486 F.3d at 241; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "[F]ailure to follow the rules" promulgated to control the process of benefit determination "denotes a lack of substantial evidence, even where the ALJ's" determination is otherwise supportable. *Cole v. Astrue*, 661 F.3d at 937 (*quoting Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009))

**A. Determination of a "disability" under the SSA**

To substantiate entitlement to DIB, a claimant must demonstrate "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(a)(1)(E), (d)(1)(A). SSA's procedures require a five-step sequential assessment of whether: 1) a claimant has engaged in substantial gainful activity during the period under consideration; 2) the claimant has a severe medically determinable physical or mental impairment that significantly limits his ability to do basic work activities; 3) the claimant suffers from a severe impairment that meets or equals one of the listings in Appendix I Subpart P of the regulations and meets the durational requirements; 4) the claimant's impairment prevents him from doing past relevant work; and, if so, 5) is it possible for the claimant to transition to other work. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), (b)-(g)

If the ALJ determines that the medical evidence demonstrates a "medically determinable mental impairment" at step two of the process, he must then, at step three, determine how the

mental impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(b)(1). In step two the ALJ must consider the claimant's: 1) ability to engage in the activities of daily living; 2) ability to function in social settings; 3) ability to concentrate, work persistently, or at a consistent pace; and 4) periods of decompensation.[1] 20 C.F.R. §§ 404.1520a (c)(2)-(3).

A claimant's functional limitations are conclusive of disability if the ALJ finds marked to extreme limitations in two of the first three categories (20 C.F.R., pt. 404, subpt. P, app. 1, § 12.08(B)), or marked to extreme limitations in one of the first three categories accompanied by three periods, lasting two weeks or more, of reduced functionality in a one year period of time. 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00(C)(4).

## B. Ruling of the ALJ

On August 24, 2011, the ALJ issued an Unfavorable determination finding, as did Dr. de la Torre (AR. pp. 291-317), that Plaintiff experienced only mild restrictions in activities of daily living and moderate difficulties in social function. (AR. p. 14) Key to the ALJ's findings was the opinions of the medical experts:

> As for the opinion evidence, significant weight is given to the assessment of Dr. Torre, the State agency psychological consultant. He opined that the claimant can understand and remember simple and one-to-four step detailed tasks, but cannot make independent decisions at an executive level; concentrate and persist for a two-hour time period in an eight-hour day with customary breaks; interact appropriately with the general public, supervisors, and peers; and set goal independently and adapt to infrequent changes (Exh. 9F-3). This assessment is consistent with the claimant's residual functional capacity and the vocational expert testified that it would allow for the performance of the same jobs.
>
> Significant weight is also given to the assessment of Ms. Barkley regarding the claimant's ability to understand, remember, concentrate, and persist. Although Ms. Barkley noted that the claimant's ability to adapt to work was "significantly

---

[1] Decompensation connotes an exacerbation[] or temporary increase[] in symptoms or signs accompanied by a loss of adaptive functioning." 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00(C)(4).

limited," the vocational expert testified that the claimant would be able to perform other work if his problems were managed.

Significant weight is also given to the GAF scores documented in the records provided by The Guidance Center as they reflect primarily moderate mental symptoms and limitations. The low GAF scores of twenty mentioned in the records are given little weight as it is unclear on what those scores were based and they were never noted to be the claimant's current GAF scores.

The undersigned finds that the assessments of Dr. Torre and Ms. Barkley are generally consistent with each other and with the evidence of record as a whole. The evidence shows that, even with medication, the claimant continued to have psychological symptoms and limitations, but that he was still able to perform some work activity and interact with others. While his employment history has been sporadic, this was likely due somewhat to his self-reported laziness and not solely the result of his mental impairments. Treatment records reflect that with proper medication and medical compliance the claimant should be able to perform substantial gainful activity.

## IV.  CLAIMS OF ERROR

Plaintiff asserts six claims of error with regard to the ALJ's determination. Plaintiff asserts that the ALJ: 1) failed to develop the record by not reviewing materials not included in the record; 2) did not properly assess Plaintiff's physical impairments; 3) did not "properly evaluate" Plaintiff's mental impairment and functional limitations; 4) did not properly assess Plaintiff's credibility; 5) found contrary to the medical evidence; and 6) improperly weighed the testimony of the VE. The facts and analysis necessary to address Plaintiff's claims three through six are inextricably intertwined. Thus, those claims are considered as one in the Magistrate Judge's analysis. Further, Plaintiff's first two claims have been rendered moot by the Magistrate Judge's recommendations below and have not been addressed.

### A. The ALJ did not properly evaluate Plaintiff's mental impairment and functional limitations

Plaintiff asserts that the ALJ did not properly evaluate his DIB claims under 20 C.F.R. §§ 404.1520 and 416.920a. Plaintiff argues that the ALJ discounted or ignored treatment notes from his treating physicians that showed an increase in symptoms, as well as a recent change in

diagnosis to include psychotic features. (Plaintiff's Br., DE 20-1, pp. 15-17) The Commissioner responds that the record before the ALJ "form[ed] a complete longitudinal picture of plaintiff's mental impairments" and the ALJ's determination is supported by substantial evidence. (DE 19, pp. 13, 19) The Magistrate Judge is not persuaded by the Commissioner's argument.

In addition to regulating the overall DIB determination process, the Commissioner has "elected to impose certain standards on the treatment of medical source evidence." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1512, 1513, 1520). The ALJ must "consider all evidence in [a claimant's] case record when" making a determination. 20 C.F.R. § 1520 Where supported by medical evidence, the ALJ is required to afford the opinions of medical professionals differing weight based upon their proximity to the manifestation of the claimant's symptoms and the resultant impact on a claimant's functionality. *Gayheart*, 710 F.3d at 375.

A treating source's opinion is entitled to controlling weight unless the ALJ finds it "[un]supported by medically acceptable clinical and laboratory diagnostic techniques . . . and [] inconsistent with the other substantial evidence in the case record." *Id.* (quoting 20 C.F.R. §§ 404.1502, 1527(c)). Where not entitled to controlling weight, a treating source opinion is still generally entitled to more weight than the opinion of a non-treating source.[2] 20 C.F.R. §§ 404.1502, 1527(c). The reasoning provided by the Commissioner for imposing this limitation is:

> "[treating sources] provide a detailed, longitudinal picture of [a claimant's] medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations alone."

20 C.F.R. § 404.1527(d)(2).

---

[2] A treating source under the regulations is an "acceptable medical source who provides [the claimant] . . . with medical treatment," and a non-treating source is an "acceptable medical source who has examined [the claimant] but does not have . . . an ongoing treatment relationship." 20 C.F.R. § 404.1502.

9

Where the ALJ finds a treating source's opinion not entitled to controlling weight, the ALJ is required to state the weight afforded to the treating source's opinion and provide "good reasons" to support that determination. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2). This requirement not only provides for meaningful review by the courts, but als0 gives notice to the claimant as to the ALJ's reasoning and ensures that the ALJ's determination is an adequate reflection of the "detailed longitudinal picture" developed through the record. *Id.* The ALJ may consider other factors tending to support or contradict the opinion of a medical expert, but a determination that "focus[es] on isolated pieces of the record is an insufficient basis" for an unfavorable determination. *Gayheart*, 710 F.3d at 378.

As the ALJ adequately noted, the record indicates that the manifestation of Plaintiff's symptoms increased markedly between June of 2010 and the date of the hearing. (AR. pp. 18-20) The ALJ's synopsis of the record demonstrates that Plaintiff experienced increased depression and anxiety over this period with only marginal response to a new treatment regimen. (AR. pp. 18-20) He lost two jobs "because he was 'slow,'" was admitted to "crisis stabilization" on two separate occasions in response to threats of suicide, and was recently assessed with a GAF score of 35, which, in the words of the ALJ, indicate "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." (AR. p. 19)

Based upon Plaintiff's overall medical history, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Yet, as cited *supra* at p. 7-8, the ALJ found no disability and no incidence of a persistent inability to work. (AR. p. 19-22) In so finding, however, the ALJ all but ignored the treatment notes from the prior year, choosing instead to afford "significant weight" to portions of the opinions of SSA's non-treating experts. (AR. p. 22)

The only portions of VBHC's treatment notes to which the ALJ afforded "significant weight" are those characterizing Plaintiff's GAF score above 50. (AR. p. 22) The low GAF scores were "given little weight as it is unclear on what those scores were based and they were never noted to be the claimant's current GAF scores." (AR. p. 22) However, the ALJ states no reasons why the GAF score of 35, assessed two months prior to the hearing, or the attendant "major impairment[s]" were being disregarded. (AR. p. 19-22) The ALJ only noted that "there are no records of" the admittance in May of 2011 to the crisis unit or "[additional mental health treatment records" beyond June 8, 2011. (AR. p. 19, 22)

Records before the ALJ do, however, detail the increase in McAlister's symptoms, the admission to the crisis unit, and the fact that Plaintiff's condition had not substantially improved since that admission. (AR. pp. 19-22) On May 18, 2011, VBHC's treatment notes indicate a "slight" improvement in functionality, but also a slight decrease on May 25th and no change on June 8th. (AR. pp. 452, 456, 461) Although limited, as the Commissioner concedes (Defendant's Br., DE 19, p. 13), the regulations provide that the ALJ "*shall* inquire fully into the matters at issue and *shall* receive in evidence the testimony of witnesses and *any* documents which are relevant and material to such matters." 20 C.F.R. § 404.927 (*emphasis supplied*)

These same regulations permit the ALJ to stay the proceeding and request additional evidence or reconvene a hearing where additional evidence is necessary to ensure a full and fair hearing. 20 C.F.R. § 404.944; *See Lashley v. Sec. of Health & Human Services*, 708 F.2d 1048, 1051 (6th Cir. 1983). This duty is certainly implicated where, as here, the record indicates worsening symptoms and the ALJ intends to rely heavily on the opinions of the SSA's medical experts who warn of the impact of increased symptoms but have not examined a claimant subsequent to the onset of those worsening symptoms.

11

As noted *supra* at pp. 3-4, SSA's examining experts found Plaintiff's reports to be credible and consistent with the record at the time they examined him. In August of 2009, one year prior to the onset of Plaintiff's increased symptoms, Ms. Barkley concluded that:

> "[Plaintiff] has had some depression in the past and suicidal thought but does not appear to be significantly depressed at this point or suicidal. It appears as though his adaptation to work would be significantly limited and is limited somewhat by his bipolar issues of excessive sleep."

(AR. p. 253) Contrary to the ALJ's interpretation that Ms. Barkley found Plaintiff to be "only 'somewhat limited by his bipolar issue of sleep,'" it is abundantly clear that the significant limitations forewarned by Ms. Barkley would be in response to increased depression. (AR. p. 18) It is also abundantly clear that the record before the ALJ cited many instances of increased depression subsequent to Ms. Barkley's examination.

As cited *supra* at p. 4, Dr. de la Torre assessed Plaintiff's limitations as mild to moderate at the time of his examination in November of 2011. However, this was six months prior to the onset of Plaintiff's increased symptoms, and eighteen months prior to the diagnosis of psychotic features. A rule out diagnosis for personality disorders was a predicate to Dr. de la Torre's findings. (AR. p. 293, 303) Rather than stay the proceedings or request further examination by SSA's experts, the ALJ determined that Plaintiff's ability to work was not impaired in the face of an increase in symptoms. These findings are troublesome in two regards.

First, as noted *supra* at p. 7-8, the ALJ did not, nor was he qualified to, address Plaintiff's impairment in the face of worsening symptoms. 20 C.F.R. § 404.1520 Second, the ALJ's determination rests on the VE's testimony that Plaintiff "would be able to perform other work if his problems were managed." (AR. p. 22) However, the VE is not an approved medical source under the regulations who is qualified to supplement, affirm, or displace the opinions of a medical expert in the face of worsening symptoms. (AR. p. 47) *See* 20 C.F.R. § 404.1520

12

Moreover, the VE also testified that Plaintiff would be "present[ed] with difficulties" if his symptoms were persistent as he claimed they were over the past year. (AR. p. 47)

Unlike SSA's medical experts, the ALJ found Plaintiff's testimony and the impact of his increased symptoms to lack credibility. (AR. p. 20) The ALJ accepted only those portions of Plaintiff's testimony that were not "inconsistent with [his] residual functional capacity assessment." (AR. p. 20) The ALJ called Plaintiff's credibility into question because he "testified that he was recently diagnosed with a delusional disorder and thought disorder, [but that] the medical records do not show such diagnoses." (AR. p. 20) As the ALJ noted, however, the CRG performed two months prior to the hearing showed an Axis I diagnosis of "bipolar I disorder, most recent episode depressed, severe with *psychotic features*." (AR. p. 471) The ALJ further discredited Plaintiff's claims because "[i]t is quite likely that his employment problems were based partly on his own self-reported laziness and not solely on his mental impairments." (AR. p. 22)

Ms. Barkley noted during her examination that Plaintiff "indicate[d] his doctors ha[d] told him that he is just obsessive in his thinking and not obsessive compulsive. He went on to say that 'I am too lazy to be compulsive.'" (AR. p. 249) The ALJ's heavy reliance on this statement, taken out of context, is both misplaced and highly inappropriate. The record clearly indicates the impact of both Plaintiff's disorder and the medications to control his symptoms on his lethargy, particularly during the two-year period between Ms. Barkley's evaluation and the date of the hearing. (AR. p. 253, 329, 343, 345, 347, 349, 367, 416, 436, 437, 440, 447, 452) Further, there is no evidence in the record that would suggest that Plaintiff's inability to work was due, even in part, to an innate laziness. As the ALJ himself noted, Plaintiff was "making pretty good money" until the onset of his illness. (AR. p. 34)

13

## V. CONCLUSION

For the foregoing reasons, the Magistrate Judge finds that the ALJ's determination does not reflect the complete longitudinal history of Plaintiff's illness, but impermissibly "focuses on isolated pieces of the record," impermissibly discounts the opinions of the own medical experts, and fails to adequately support the overall determination. *Gayheart*, 710 F.3d at 378. Thus, the ALJ's determination is NOT supported by substantial evidence.

## VI. RECOMMENDATION

For the reasons stated above, the undersigned recommends that the plaintiff's motion for judgment on the record (DE 12) be **GRANTED IN PART**, Defendant's motion for judgment on the record be **DENIED**, and the case be **REMANDED** to the SSA for rehearing.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 19th day of September, 2013.

/s/Joe B. Brown
Joe B. Brown
Magistrate Judge